STATE v. DUNCAN C. HAYWOOD.

*Juror—Disqualification—Motion to Quash—Apt Time—Insanity at the time of the trial—Issues.*

1. The non-payment of taxes for the year preceding the first Monday in September, constitutes a disqualification to act as a juror.

2. The objection to a grand juror, who acted in passing upon the indictment, based on such incapacity, taken in apt time and in proper manner, is fatal to the bill.

3. The regular way of making the objection, when the facts do not appear in the record, is by plea in abatement, and if it appears on the face of the record, by a motion to quash, but in this State the distinction has not been held to be important, and a motion to quash in either case is permitted.

4. This objection must be taken in apt time, or it will be waived, and apt time is before the prisoner has pleaded. So, where on his arraignment, it was suggested that the prisoner was then insane, and an issue as to his sanity at the time was submitted to a jury, who found the defendant insane and incapable of making his defence, which verdict was set aside, and the cause continued, and, at the next Term, motions to remove the cause to another county, and for a continuance, were made and refused, and then the motion to quash was made, *It was held,* to be in apt time.

5. A motion to remove a cause to another county, cannot be made until the party has pleaded, and the case is at issue.

6. In such case, it is not necessary for the prisoner to offer evidence of the disqualification, if the Judge holds that the motion is too late, and refuses it on that ground alone.

6. Where, upon his arraignment, it is suggested that a prisoner is insane, and not capable of conducting his defence, the proper manner of procedure is to

submit an issue to the jury, in order to ascertain this fact, and while there are precedents for submitting the issue as to guilt at the same time, the practice is disapproved.

(*State* v. *Johnson*, 5 Ired., 221 · *State* v. *Watts*, 82 N. C., 656 ; *State* v. *Griffin*, 74 N. C., 316 ; *State* v. *Watson*, 36 N. C., 624 ; *State* v. *Liles*, 77 N. C., 496 ; *State* v. *Haywood*, 73 N. C., 437 ; *State* v. *Barbee*, 93 N. C., 498 ; *State* v. *Smith*, 80 N. C., 410 ; *State* v. *Baldwin*, *Ibid.*, 390 ; *State* v. *Blackburn*, *Ibid.*, 474 ; *State* v. *Reid*, 1 D. & B., 377 ; *State* v. *Swepson*, 81 N. C., 571 ; *State* v. *Harris*, 8 Ired., 136, cited and approved).

INDICTMENT for forgery, tried before *Clark, Judge*, and a jury, at September Criminal Term, 1885, of the Superior Court of WAKE county.

The indictment on which the defendant was tried and convicted, consists of one count, charging forgery, contained in a bill passed on by the grand jury, at June Term, 1884, of Wake Superior Court, and of two others, the first charging forgery, and the second the uttering of a forged order, passed on at July Term, 1885. These bills were consolidated by order of the Court, as authorized by the rulings in *State* v. *Johnson*, 5 Ired., 221, and *State* v. *Watts*, 82 N. C., 656.

The trial came on at September Term, following, when the defendant being arraigned, and called on to answer the charge, the counsel appearing on his behalf, suggested to the Court his present insanity and inability to plead or make defence, and asked that a preliminary inquiry as to his mental condition be made before a jury. At a subsequent day during the Term, an issue was prepared and submitted to a jury, in this form: "Is the defendant, Duncan C. Haywood, sane, and capable of conducting his defence in the indictment?" The jury returned a verdict in the negative, and thereupon the defendant was ordered to be removed, and was conveyed, to the asylum for the insane near Raleigh, and committed to the custody and control of the authorities thereof. On the next day, and on motion of the Solicitor for the State, the verdict was set aside, as being against the weight of the evidence—the order of commitment to the asylum recalled—and the defendant brought back. The cause was then

continued to the next term "*without prejudice,*" and a day certain fixed for the trial, the Judge giving notice to counsel, that the two issues, as to the defendant's mental capacity to manage his defence, and of his guilt, would be submitted to one and the same jury at the same time.

At the designated day of the next Term, the cause was again called, and the same counsel acting for the defendant, asked for an order for its removal to another county, upon an affidavit offered in its support, to which the Solicitor opposed a counter affidavit, upon the hearing of which, the Court found as a fact, that "the ends of justice did not require, and would not be promoted, by the removal," and denied the application. To this ruling counsel excepted. A motion was then made for a continuance, which was also refused, and exception entered.

Counsel then moved that the bill found at July Term, 1885, be quashed, on the alleged ground that a juror of the grand jury which passed upon it, was disqualified from acting as such, by reason of his not having paid his taxes for the preceding year—no affidavit accompanying the motion to sustain it. The Court ruled that the motion came too late, inasmuch as the defendant had been called on to answer the indictment at July Term, preceding—the preliminary issue of his present legal capacity tried—a verdict rendered and set aside—cause continued—and motions for removal and continuance made and refused at this Term. Counsel also excepted to this ruling.

The Court thereupon directed the trial to proceed, and the clerk to propound the usual inquiry to the defendant, who, in proper person, pleaded not guilty of the charge, and the jury were empanelled to try the two issues :

"Is the defendant guilty or not guilty ?

"Is he now insane?"

Passing by the many rulings to which exceptions were taken during the progress of the trial, as not necessary to be considered in determining the appeal, it is sufficient to add that both

54

issues were found against the defendant, and the sentence of the Court having been pronounced, the defendant appealed.

*Attorney General,* for the State.

*Messrs. Jos. B. Batchelor, T. C. Fuller* and *John Devereux, Jr.,* for the defendant.

SMITH, C. J. (after stating the facts). The authorities in this State fully settle these two propositions of law:

1. The non-payment of taxes for the year preceding the first Monday in September, when the list is made of competent jurors, constitutes a disqualification to act. The Code, §§1722 and 1723; *State* v. *Griffin,* 74 N. C., 316; *State* v. *Watson,* 86 N. C., 624.

2. The objection to a grand juror who acted in passing upon the indictment, based on such incapacity, taken in apt time and in a proper manner, is fatal to the prosecution.

The regular and appropriate method of making the objection under the general practice, when the fact upon which it depends does not appear in the record, but is outside, and to be established by proof, is by plea in abatement, and if it does so appear, by a motion to quash.

In our practice, the distinction has not been recognized as important, and the motion to quash has been held proper in either case. It has the sanction of the Court, in *State* v. *Liles,* 77 N. C., 496, where a grand juror was disqualified by reason of his having a suit pending and at issue in the same Court, and for this personal defect, the indictment, on motion, was quashed. *State* v. *Haywood,* 73 N. C., 437; *State* v. *Griffin,* 74 N. C., 316; *State* v. *Barbee,* 93 N. C., 498.

And a plea in abatement for the same incapacity in one of the grand jurors, was sustained in *State* v. *Smith,* 80 N. C., 410, and it was held not necessary to show that he participated in the action of the body in finding the bill.

The objection, to be available, must be made in apt time, and if not made in apt time, is deemed to have been waived, and cannot be taken at a later stage in the progress of the cause. In the present case, it was interposed upon the arraignment, and before pleading to the charge, which the Court held, for the reasons stated in the ruling, too late to be entertained, and disallowed the motion. In this we think there is error.

The regular way of raising the question of the competency of the grand jury, in the words of BYNUM, J., " is not by a motion to quash, but by plea *on the arraignment for trial.*" *State* v. *Haywood*, 73 N. C., 437.

"The defendant is at liberty," says DILLARD, J., "to avail himself of any want of qualification in the grand jury, in whole or part, *when called* on to plead." *State* v. *Smith*, 80 N. C., 410.

"If there be a defect in the accusing body," is the language of the same learned Judge in another case, decided at the same Term, "it is the right of the party indicted, by plea in abatement, or by motion to quash, to avail himself of such defect; but it is required to be exercised at the earliest opportunity after bill found, which must be *upon the arraignment, when the party is just called upon to answer.*" *State* v. *Baldwin, Ibid.*, 390.

The prisoner moved to quash the indictment, after he had pleaded not guilty, for an alleged defect in the organization of the grand jury, and it was declared by the Court, ASHE, J., delivering the opinion, that "the objection came too late. It was *not taken in apt time.*" *State* v. *Blackburn, Ibid.*, 474.

"The non-payment of taxes, is held to disqualify a grand juror, and a defendant may avail himself of such disqualification, by a plea in abatement, if filed in apt time. What is meant by *apt time* is the arraignment of the defendant." *State* v. *Watson*, 86 N. C., 624.

But whatever difference may be supposed to exist as to the two methods of raising the objection, they are removed and the practice settled by statute, which provides, that "all exceptions to grand juries, for and on account of their disqualification, shall

be taken before the jury is sworn and impanelled to try the issue, *by motion to quash the indictment,* and if not so taken, the same shall be deemed to have been waived." The Code, §1741.

This law at once determines when the exception to a grand juror must be taken, and in what mode it must be done, or may be done.

The defendant, when first called upon, did not plead to the charge, but on the suggestion of counsel appearing on his behalf, an inquiry was instituted before a jury, as to the defendant's mental condition, and legal capacity to conduct his defence and protect his own rights, and this preceded the entering of any plea to the indictment. The rendition of the verdict, in answer to this inquiry, and the subsequent order setting it aside, left the cause in the same plight and condition as before, and it was then continued, "*without prejudice,*" that is, without impairing any of the legal rights of the accused as they then existed, and among them, must be included the right to make the motion to quash. *State* v. *Watson, supra.*

The motion to remove was prematurely made, since no issue had then been made as required by law. *State* v. *Reid,* 1 D. & B., 377; *State* v. *Swepson,* 81 N. C., 571.

The overruled motion to continue, did not change the *status* of the prosecution, and hence, when again arraigned, the defendant had the manifest right to raise the objection to the grand juror, and he should have been afforded an opportunity to adduce proof of the alleged disqualifications, if such there was among the grand jury that found the last bill.

It was argued for the State, that no evidence was offered upon the point, and consequently none excluded to the defendant's injury. But when the Judge decided that the motion came too late, he necessarily decided that he would hear no evidence in its support, nor entertain the motion itself. The error consists in not giving an opportunity for the introduction of any proof on the subject, when the motion was made in proper time.

Again, it may be suggested, that as the two indictments were found at different times, and by different grand juries, and the competency of one only is called in question, the only effect of sustaining the motion, would be to quash the two counts constituting the last indictment, leaving the first undisturbed, and as the verdict was general, the Court may proceed to judgment upon the unaffected count, not obnoxious to complaint, the others being regarded as stricken out, as if they had been quashed.

But this cannot be allowed.    Evidence was introduced of another act of forgery, committed upon a different person by the defendant, and received as applicable to the charge of uttering, and tending to show a guilty knowledge of the false making of that uttered, and was confined to that part of the charge.    It would have been incompetent to prove one forgery, by showing that the accused had committed another, and this would have vitiated the trial of the single count contained in the original bill.    The trial was not such as it would have been, had the last indictment been quashed and eliminated from the record, and the proofs would have been restricted, when confined to the single interpretation of an act of forgery.    How far the jury may have been influenced by the admission of evidence, that would not have been heard in the latter case, it is not our province nor in our power, to ascertain.    It is sufficient to say, that evidence, incompetent to sustain the first charge, *was heard*, and should not have been heard, if the motion to quash had prevailed.    It is of the highest importance, that the rules of law should be observed in the administration of penal justice, and that every person accused of crime has all the safeguards provided for the purpose of securing a fair and legal trial, to which those whose sanction is found in the experience of ages, so largely contribute.    A right to have a grand jury, competent under the law, to pass upon the accusation preferred, is guaranteed to all, and must be upheld.

While we do not mean to decide that there was error in law, which enters into and vitiates the verdict in submitting the double issue, as was done in this case, of present insanity and guilt, to

the same jury, for this course has been pursued in other trials, *Rex* v. *Little*, Russ. and R., 430; *Regina* v. *Southey*, 4 Foster & Fin., 864, cited in Buswell on Insanity, §461, and these furnish a precedent, it is most obviously fitting and proper that the inquiries should have been separated, and that the defendant's capacity to enter upon a trial, should be determined before he is put upon the trial; for the trial would amount to nothing if the defendant has not the required capacity to defend himself against the charge. The very requirement to answer, prejudges the case adversely to the prisoner, and must have an unfavorable influence upon the jury, in passing upon the issue. Besides, the blending of the inquiries, by allowing evidence pertinent to one, and incompetent to the other, notwithstanding the caution the Judge may give as to its consideration, may tend to confuse the minds of the jury, and to do injustice to the defendant. In *State* v. *Harris*, 8 Ired., 136, the preliminary inquisition was made by the jury as to the capacity of the prisoner, who from infancy had been a deaf mute, to understand and make defence to the charge, and this course was approved by the Court. In commenting on cases cited in the opinion, BATTLE, J., says: "We have stated these cases with more than usual particularity, because they set forth clearly, the true grounds upon which a deaf and dumb prisoner, whose faculties have not been improved by the arts of education, and who, in consequence thereof, cannot be made to understand the nature and incidents of a trial, ought not to be compelled to go through, what must be to him, the senseless forms of such a trial. Whether arising from physical defect or mental disorder, he must, under such circumstances, be deemed not sane, and of course, according to the great authority of Lord Hale, he *ought not to be tried.*"

There must be a new trial of the criminal charge contained in the indictment, while we see no sufficient reason for interfering with the finding upon the other, properly precedent in the regular order of proceeding. The verdict simply determines the defendant's sanity at the time of the trial, but does not pre-

clude a similar inquiry hereafter, if any sufficient basis for it is laid before the Judge, to warrant its being submitted to a jury, of an insanity since supervening, and still existing. *People* v. *Farrell*, 31 Cal., 576.

This will be certified, to the end that the verdict of guilty be set aside, with whatever was done since the erroneous ruling upon the motion to quash, and the cause proceed as upon the arraignment, in accordance with this opinion.

Error.                                                                 Reversed.